UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CR NO.:  18-545 |
|---|---|---|
| | : | |
| vs. | : | |
| | : | |
| JOHN JOSEPH KRASLEY | : | |

## DEFENDANT'S ANSWER TO MOTION TO WITHDRAW AS COUNSEL

1. Admitted.

2. Admitted.

3. Admitted.

4. Denied. Mr. Krasley has made regular payments since March of 2019. As noted in a recent email from Mr. Donato to my Power of Attorney, Timothy J. Lagler, Jr., Mr. Donato requested an additional $20,000.00 retainer on October 1, 2019, and said $20,000.00 was mailed to Mr. Donato on October 2, 2019. See correspondence from Mr. Donato to Mr. Lagler, marked Exhibit "A" attached hereto and made a part hereof.

5. Denied. Mr. Donato refused to attend trial in this matter without delivery of funds in the amount of $20,000.00 which was sent to him on October 2, 2019.

6. Admitted in part and denied in part. It is admitted that attorney-client relationship became contentious. This began on or about the beginning of August, 2019, with an email correspondence from Mr. Donato wherein he stated that he would not be taking direction from Mr. Krasley and he refused to provide documents relating to research allegedly performed on his file. See Exhibit "B" attached hereto and made a part hereof. However, it is denied that Mr. Krasley became unreasonably difficult.

Mr. Donato began to demand unreasonable amounts of additional retainer funds from Mr. Krasley to continue representation without accounting for the time previously billed by Mr. Donato, CSI Investigations and Cornerstone, in spite of repeated requests of Mr. Donato for an accounting of same. By further answer, Mr. Donato was fully aware that Mr. Krasley was prescribed anti depression and anti-anxiety medication prior to being incarcerated and was not always given medication for same during his incarceration and was not given his medication at the time of his trial. In spite of same, Mr. Donato allowed the trial to continue without full participation and cooperation by Mr. Krasley due to his lack of proper medication.

7. Denied. Not only did Mr. Donato not provide all discovery and Jencks materials prior to trial. To date, Mr. Krasley is still not in possession of same and Mr. Donato refused to provide them after trial without payment of an additional $111,000.00. Further, the "decisions" and "strategic decisions" which were discussed with Mr. Donato prior to trial were not executed at trial which lead to a guilty verdict. See Exhibit "C" attached hereto and made a part hereof. By further answer, Mr. Donato and Mr. Glenn both were in possession of documents which exonerated Mr. Krasley, i.e., a written confession letter by another person as well as FBI correspondence which stated that a "thumbnail" photo was found a computer not owned by Mr. Krasley, and which Mr. Krasley did not have access to, in the Krasley residence and which Mr. Donato did not introduce into evidence at trial and Mr. Glenn did not use to pursue the actor in said crime.

8. Denied. Stating facts regarding Mr. Donato's representation are not "attacks". By further answer, Mr. Donato never reached out to Mr. Krasley after the trial to discuss options relating to the verdict and should not be surprised by Mr. Krasley's disappointment in his lack of concern after losing a trial which Mr. Krasley paid approximately $150,000 for his defense "expertise" and then received an additional bill in the amount of $111,000.00 after the time of trial. A trial wherein Mr. Donato did not follow through with the defense that was discuss prior to trial wherein written proof in the form of a confession letter nor the FBI evidence was never introduced at the time of trial. Nor other items of physical evidence which indicate an actor other than Mr. Krasley was the perpetuator of the crime. In addition, Mr. Donato was fully aware that Mr. Krasley was prescribed anti depression and anti-anxiety medication prior to being incarcerated and was not always given medication for same during his incarceration and was not being medicated at the time of his trial. In spite of same, Mr. Donato allowed the trial to continue without full participation and cooperation by Mr. Krasley due to his lack of medication.

By further answer, due to the lack of professionalism and lack of zealous defense of my matter and also due to the harassing nature of the government's attorney in purposefully pursuing this case against me, while there is a confession letter which they were both in possession of, I have prepared a complaint for the Supreme Court of Pennsylvania which I intend to file with their office. See Exhibit "D" attached hereto and made a part hereof.

9. Denied. Mr. Krasley is not in non-compliance and the contentious nature of the

attorney-client relationship was predicated by Mr. Donato as evidenced in the Exhibit

"A" attached hereto.

Respectfully submitted,

agent for John J Krasley

John J. Krasley, Defendant

**From:** Tjsjob <tjsjob@aol.com>
    **To:** tlsnotary <tlsnotary@yahoo.com>
**Subject:** Fwd: Krasley - Retainer
    **Date:** Thu, Nov 21, 2019 10:14 pm
**Attachments:** John - Checks.pdf (679K)

-----Original Message-----
From: Tjsjob <tjsjob@aol.com>
To: art <art@artdonato.com>
Cc: nancymcl <nancymcl@artdonato.com>
Sent: Wed, Oct 2, 2019 3:02 pm
Subject: Re: Krasley - Retainer

Art - These are copies of checks going out in today's mail.

Thanks,

Tim

-----Original Message-----
From: Arthur T. Donato <art@artdonato.com>
To: Tjsjob <tjsjob@aol.com>
Cc: Patrick Link <rplink@linklawphilly.com>; Nancy McLaughlin <nancymcl@artdonato.com>
Sent: Tue, Oct 1, 2019 5:35 pm
Subject: FW: Krasley - Retainer

Hi Tim. Forwarding this to you. We will need at least $20,000.00 by the end of the week to cover these and
other costs. -Art


Arthur Thomas Donato
Law Offices of Arthur Thomas Donato
216 W. Front St.
Media, Pa. 19087
(o) 610 565 4747
(f) 610 892 9783
(c) 484 433 5607
art@artdonato.com


**From:** Jason Silva <jsilva@cornerstonediscovery.com>
**Date:** Tuesday, October 1, 2019 at 4:25 PM
**To:** Arthur Donato <art@artdonato.com>
**Cc:** Billing <billing@cornerstonediscovery.com>, Nancy McLaughlin <nancymcl@artdonato.com>,
Patrick Link <rplink@linklawphilly.com>
**Subject:** Krasley - Retainer

Art,

Catching up with some billing items, and wanted to let you know we are at the end of the retainer for Mr.
Krasley. I am kindly requesting a replenishment for the continued investigation and potential trial work coming
up. Depending on the anticipated needs leading up to, and during the trial, I would request an additional
$10,000 to cover the outstanding balance, and future work.

Exhibit "A"

https://mail.aol.com/webmail-std/en-us/PrintMessage                                                              1/2

Attached is a detailed invoice for work through September. Please let me know if you have any questions or concerns. You can call me directly anytime on my cell.

Sincerely,
Image removed by sender.
Cornerstone Discovery

Jason Silva / Managing Director
jsilva@cornerstonediscovery.com
Office: 267.639.6900 | Cell: 484.574.0761
**Cornerstone Discovery**
4775 League Island Blvd. Philadelphia, PA 19112
http://cornerstonediscovery.com
Image removed by sender. Facebook. Image removed by sender. Twitter.
Image removed by sender. Google Plus. Image removed by sender. Linkedin

Image removed by sender.

Don't miss this latest news from Cornerstone:
Case Study: How a Litigation Support Partner Can Help Grow Your Firm



**New Tripoli Bank**

P. O. Box 4??
6748 Madison Street
New Tripoli, PA 18066

**Cashier's Check**

31967

0313

October 2, 2019

Pay to the
Order of:   **Arthur T Donato Esquire**

$9,000.00

**Nine Thousand and 00/100**********************************************************

Memo Cornerstone

M Smith

⑈031967⑈  ⑈031312796⑈   275000025⑈

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 1040 |
| **Date Posted** | 10/07/19 |
| **Check Amount** | $2,000.00 |



For your security, information like account numbers, signatures, and the ability to view the backs of checks have been removed from the images.
You can see full or partial fronts and backs of the images by using the link at the top of the window.

🏠 Equal Housing Lender

**From:** Arthur T. Donato <art@artdonato.com>

  **To:** Tjsjob <tjsjob@aol.com>

  **Cc:** link.pat@gmail.com <link.pat@gmail.com>; Nancy McLaughlin <nancymcl@artdonato.com>

**Subject:** RE: John

  **Date:** Tue, Aug 6, 2019 2:29 pm

Hi Tim. Again- I am not taking direction from John. I am not going to go back and copy caselaw, articles, rules, statutes, law review articles, treatises on computer hacking and other items. If he reviews the itemized bills we provide, he will understand what research I have done and the general issues involved. I encourage him to research those issues if he chooses. He either trusts me and my judgement and representation of him or he does not. If he does not, he can terminate our attorney client relationship. Pat will see him Friday and discuss the Cornerstone issues as well as a proposed stipulation. I can call the institution and ask them to address any issue, but I will need to know what the issue is, whether he has made an appropriate request for treatment, and any reasons he was given for lack of treatment. These rants on his part necessitating a response from us are a colossal waste of time and, therefore his funds. -Art

Arthur Thomas Donato

Law Offices of Arthur Thomas Donato

216 W. Front St.

Media, Pa 19063

(o)610 565 4747

(f) 610 892 9786

(c) 484 433 5607

art@artdonato.com

#### \*\*\*\*CONFIDENTIALITY NOTICE\*\*\*\*

This email message and any documents accompanying this email transmission are communications from the Law Offices of Arthur Thomas Donato. These are privileged and confidential attorney-client communications and/or work product of counsel. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution and/or the taking of or refraining from taking any action in reliance on the contents of this email information is strictly prohibited and may result in legal action being instituted against you. Please reply to sender advising of the error in transmission and delete the email message and any accompanying documents from your system immediately. Thank you.

$$Exhibit \text{ ''B''}$$

**From:** Tjsjob <tjsjob@aol.com> Case 5:18-cr-00545-EGS  Document 97  Filed 11/22/19  Page 10 of 28
**Sent:** Tuesday, August 06, 2019 2:20 PM
**To:** Arthur T. Donato <art@artdonato.com>
**Cc:** link.pat@gmail.com; Nancy McLaughlin <nancymcl@artdonato.com>
**Subject:** John

Art -

Attached is a letter from John. It is 4 pages because the paper he has at the prison is too long for my scanner so I had to fold it to make it fit.

Thanks,

Tim

610.504.7147

## MEMORANDUM

TO: Tim Lagler
FR: Art Donato
CC: Pat Link
DT: July 29, 2019
RE: Your Emails to Art Donato of July 26th and July 29, 2019 - John Krasley

On July 26, 2019 and July 29, 2019, I received two different emails with attachments from Tim Lagler, Power of Attorney for John Krasley. The purpose of this Memorandum is to detail my response to that correspondence so that Tim can easily explain this to John.

The attached letters to the email of July 26th indicate positions that Mr. Krasley has taken over the course of the time I have been involved representing him. To the extent that any of these issues are relevant, they will be incorporated in to the examination and cross examination of witnesses, including Agent Evans, at the time of hearings on pretrial motions or the trial itself. I have explained this to Mr. Krasley repeatedly in telephone conversations as well as in person at the time of the hearing on the initial bail motion.

Mr. Lagler's letter indicates that John would like us to file a bail motion as soon as possible. No fewer than a dozen times have I discussed with Mr. Krasley and Mr. Lagler that the filing of a bail motion in this case with no additional evidence will be a waste of time and money and the chances of success are dim. The court indicated correctly that there is a presumption of incarceration until trial in cases where individuals are charged with the offenses Mr. Krasley is now charged with. There is no additional evidence that would serve to rebut that presumption.

Additionally, Mr. Krasley has repeatedly indicated that he does not want to spend the money on things that will not be availing in his case. Matters of strategy such as which motions to file and when are the sole province of counsel for Mr. Krasley and not for Mr. Krasley himself. Mr. Krasley has sole authority over the following issues:

1. Whether to go to trial or plead guilty.
2. Whether to have a jury trial or a non-jury trial.
3. Whether to testify on his own behalf or not.

All other matters are matters of strategy and the ultimate decision maker in those types of matters is the trained lawyer that a criminal defendant hires to represent him.

The second paragraph of Mr. Lagler's letter of July 26, 2019, indicates "there was no evidence before his arrest, search warrant revealed no evidence after his arrest". Again, this assertion has been the topic of conversation repeatedly over the course of the last few months. The evidence against Mr. Krasley is contained in the discovery that we have received in the

matter. The mere fact that no images of child pornography were found on any of Mr. Krasley's devices does not mean that he is not culpable and that there is no probable cause for the charges in the indictment. The government's theory is that they can prove by a preponderance of the evidence for purposes of bail issues as well as beyond a reasonable doubt at trial that Mr. Krasley is guilty of the offenses contained in the indictment by virtue of the Title III Interception, the trap and trace devices, the pole camera, and other matters that we have repeatedly discussed with Mr. Krasley. We have also informed Mr. Krasley that there are viable defenses as to some or all of that evidence and, pursuant to his instructions, have been investigating with the help of Cornerstone and CIS Investigations to attempt to prove that Mr. Krasley's IP address was hacked and therefore, whoever was transmitting those images was not Mr. Krasley but someone else doing it in his name. This has been explained to Mr. Krasley as recently as earlier this month during several telephone calls in which I informed him that Cornerstone could not conclude from the Kismet data that someone hacked his IP address and that their suggestion was that they examine the devices that had been seized by Mr. Krasley. I explained the reasoning why they would want to do that very thing. I have spoken with the government who indicated that they would be willing to set up a time when our experts from Cornerstone can examine those devices. However, in my last call with Mr. Krasley, he indicated that he would not pay for that and he told me specifically not to have Cornerstone do that and that "I am going in a different direction" although he declined to elaborate what direction that was. It is still our view that Cornerstone should examine those devices.

In the third paragraph of Mr. Lagler's correspondence of July 26, 2019, he relates that John believes that the agent perjured herself and there were never any chat fragments and that he wants Agent Evans, AUSA Glenn and AUSA Ahuja charged with perjury and he wants that alleged in the bail petition in which he now insists. However, such an allegation cannot credibly be made and would not be accepted as grounds to rebut the presumption of incarceration in a subsequent bail motion.

In the fourth paragraph, Mr. Lagler indicates that Mr. Krasley would like "an itemized description of ... the material that was researched so he can go through it too. There may be things in there that he may be of assistance with. He wants to be able to discuss this with his legal team...". It is my understanding that Mr. Krasley is referring to the itemized bills that have been received by Mr. Lagler, sent by my office pursuant to the fee agreement. In those bills, there is time charged for research on a variety of topics. That research includes: research for the sufficiency of the indictment, elements of the offense, potential pretrial motion issues, potential for discovery issues, potential arguments for bail, cross examination and motions to dismiss at the conclusion of the government's case, among other things. It is impossible for me to go back and find copies of everything I read and then provide them to Mr. Krasley. Moreover, if that could be accomplished, Mr. Krasley would not be able to make sense of any of it since he is not a trained lawyer. This is an unreasonable request, with which it would be impossible to comply, and would be totally unavailing. As I informed Mr. Krasley and Mr. Lagler, he has a choice. He can either trust me to continue to represent him and perform the tasks that I believe are necessary to protect his best interests or he can terminate our relationship. He is not going to direct what I

2

*12*

do, he is not going to demand that I give him things, and he is not going to substitute his judgment for mine.

Mr. Lagler also indicates that John needs surgery and he spoke with his counselor and he is getting weaker. All of this evidence was produced at the time of the bail hearing on the initial bail motion and, it is not the subject of an additional bail motion that would be availing. However, we can work with the Bureau of Prisons and the Lehigh County Jail to ensure that Mr. Krasley gets the medical attention he needs. We are certainly willing to do that to assist him.

On July 29, 2019 we received an additional email from Mr. Lagler indicating that he needs to take care of the estate matter that is attached to that email and that is another reason why he wants a bail motion filed. For the reasons articulated above, we would decline to file a bail motion because, as a matter of strategy, this is not something that would add to the evidence sufficient to rebut the presumption.

Mr. Krasley has been unreasonable in these and other requests. My most recent telephone conversation with him was totally unproductive for many reasons, including unreasonable demands as well as interrupting every answer I tried to give to any question he had. While he insists that he does not know what is going on in his case, we have had constant contact with Mr. Krasley through Mr. Lagler as well as directly with Mr. Krasley during the course of these proceedings.

Mr. Krasley is currently not in compliance with the fee agreement in this matter. Although counsel has continually said to Mr. Krasley that I would not abandon him if he were unable to pay the fees that he has agreed to pursuant to the fee agreement, Mr. Krasley on one day wants a lot of tasks done that are totally a waste of time and on other days says that he does not want tasks done that need to be done in order to promote his best interests. For example, Mr. Krasley has instructed the undersigned not to visit him and only wants a visit from Mr. Link. This is because the undersigned is working on an hourly basis as agreed to by Mr. Krasley initially and Mr. Link is working on a flat fee. Mr. Link and I have been in contact with each other regarding this case in a diligent way. Mr. Link will visit Mr. Krasley when it is necessary and will supply Mr. Krasley with the supplemental discovery received as soon as he can, both of those points have been repeatedly related to Mr. Krasley.

Finally, it is important for lawyers involved in a case to make sure to do those things that are necessary and not perform tasks that are unnecessary. It is important for lawyers involved in the case to raise meritorious issues only before the court. This is so, not only because it is required by the Rules of Professional Conduct, but also because the lawyers in a case attempt to maintain the client's credibility before the court. Filing things that the lawyers know or should know will be unavailing. Taking positions that people have committed perjury, for example, without any proof of that other than the feeling of the defendant, would be frivolous and cause the court to view the defendant in a less than favorable light. And, correspondence like this, repeated correspondence, over an extended period of time, where Mr. Krasley raises the same

3

issues again and again and continues to do so not because he doesn't understand the reasons why those things should not be pursued but because he refuses to accept it, is a waste of counsels' time, a waste of Mr. Krasley's money and therefore, counsel has a responsibility, sometimes, to protect the client from himself.

4

14

**From:** Arthur T. Donato <art@artdonato.com>

   **To:** Tjsjob <tjsjob@aol.com>

   **Cc:** link.pat@gmail.com <link.pat@gmail.com>; Nancy McLaughlin <nancymcl@artdonato.com>

**Subject:** Re: John

   **Date:** Sun, Nov 3, 2019 8:32 pm

Tim. John said he would pay me and the fee agreement provides he has agreed to do so. He assured me in May that if he got convicted, he would sell his house to pay, what he knew would be substantial charges, since he hasn't paid fees to me or replenished the retainer, as he was obligated to do under the agreement, since the spring. It was under that agreement that I told him I would not withdraw and I would see it through to the end of a trial. If he wants me to discontinue my representation of him now, all he has to do is discharge me, and I will notify the court he has done so. But, he owes the balance of the invoice you received Friday and I expect that it will be paid, or that John will agree to a judgement in that amount to be filed as a lien against his home. Until either the invoice is paid in full, or, a lien in that amount is perfected against his assets, I will not spend any additional time on this case. And, as I said before, a client does not direct my activity or control my judgement as to what needs to be done on his or her case. I will not provide any material to a paralegal. If John wants me to provide anything to another lawyer, he must have his new selection of counsel contact me. -Art

Arthur Thomas Donato

Law Offices of Arthur Thomas Donato

216 W. Front St.

Media, Pa. 19087

(o) 610 565 4747

(f) 610 892 9783

(c) 484 433 5607

art@artdonato.com

**From:** Tjsjob <tjsjob@aol.com>
**Date:** Sunday, November 3, 2019 at 8:09 PM
**To:** Arthur Donato <art@artdonato.com>
**Cc:** "link.pat@gmail.com" <link.pat@gmail.com>, Nancy McLaughlin <nancymcl@artdonato.com>
**Subject:** John

Exhibit "C"

John wants research done and he can't afford to keep paying you for it, my sister is a paralegal and he wants to know if you can send her a release to get the discovery for her to review.

Thanks,

Tim

610.504.7147

JOHN J. KRASLEY
C/O TIMOTHY J. LAGLER, JR., POA
1216 N 15 STREET
ALLENTOWN, PA 18102

November 22, 2019

The Disciplinary Board of the
Supreme Court of Pennsylvania
820 Adams Street, Suite 170
Trooper, PA 19403

Sir/Madam:

My name is John J. Krasley and I recently had a trial at the Federal Courthouse in Easton, Pa, before the Honorable Edward Smith. I am writing to you because in the preparation for my trial, my attorneys, Arthur T. Donato and Pat Link, and I discussed my defense as well as the evidence which would be used at my trial to prove my innocence. After months of what I thought was preparation by my attorneys, none of the defenses or evidence we discussed were used by them to defend me. Two of the specific items of evidence we discussed were in the form of documents, copies of which were in the possession of my attorneys and the originals were in the possession of the government. Namely, an oral statement taken by the FBI dated June 19, 2009, and later transcribed by the FBI as well as a handwritten confession.

In spite of the fact that all of the attorneys, defense and prosecution, were in possession of this evidence none of these items were introduced as evidence. Further, even though the government had possession of these items, which incriminate another person/persons, including physical evidence found on a computer owned and in possession of someone else, wherein actual physical evidence of the crime was found, they never pursued a case against this other person. Due to all of the attorneys working diligently to hide these details, I was found guilty of crimes which I did not commit.

After Title III interception, air surveillance and ground surveillance, on December 7, 2018, I was arrested and placed in federal prison in Philadelphia, PA, for charges relating to multiple counts of child pornography. The government's entire case is based upon I.P. address evidence. There is no actual physical evidence that these crimes were committed by me. Just that it was someone using my I.P. address. The only link to me is that my name happened to be the name on the bill from the internet provider. Each time that the government subpoenaed the internet provider for the owner of the I.P. address, they provided my name – that is the ONLY link to me. Like millions of other consumers of internet services, simply having my name on a bill does not designate that I am the only user of this service in my residence.

Exhibit "D"

17

The Disciplinary Board of the
Supreme Court of Pennsylvania
Page -2-

In further explanation, after receiving subpoenaed account owner information for a certain I.P. address, the Pennsylvania State Police, FBI, Homeland Security and government computer experts had searched me and my home on 4 occasions over a period of 13 years, beginning on or about August 1, 2006, continuing on June 12, 2009, July 18, 2013, – the last search taking place on or about December 7, 2018. On all of these occasions, including the December 2018, search, the Pennsylvania State Police, FBI, Homeland Security and government computer experts found no evidence on any of MY computers, phones or electronic equipment. Nor did the Title III interception, air surveillance and ground surveillance yield any proof of my guilt. They did, however, during the June 12, 2009, search, find one "thumbnail" picture on my (now ex) wife's work computer which she stated in the translated statement from the same date, blamed on our nephew, James Krasley, Jr. See the transcribed verbal statement of Kimberley Krasley marked Exhibit "A", attached hereto. Both the government's attorney and my attorneys were in possession of this statement taken by the FBI, at the time of my trial and neither chose to do the right thing and introduce this evidence or, in the case of the government, use this information to pursue an investigation against my ex-wife as the only evidence of any crime was found on her work computer, a computer which I had no access to. Also, during my ex-wife's interview following the 2009 search, she also stated that she gave access to our home computer networking system to our neighbor. These happened to be other theories which were never investigated by the government to exonerate me and find the true actor in this crime. The other crucial piece of evidence which my attorney should have used in my defense and the government should have used to pursue the case against my ex-wife is a handwritten, undated, letter written by my ex-wife confessing to the crime and apologizing to me for looking at internet porn and claiming to not "knowingly or intentionally downloaded or looked at children", stating that she was "ashamed of what she did" and that she "didn't want me to be blamed for her doings." She was worried about going to jail and being abused – as the police threatened me with while they were searching the house. She finished the letter by asking for my forgiveness. See Kimberly Krasley's handwritten confession letter marked Exhibit "B", attached hereto. Although the letter was not dated, as I recall, she wrote it about a month or so after the 2009 search. This letter was kept in our safe and the government took during a search and has had possession of the original since that time. In spite of the fact that the government had this letter along with the evidence of the ONLY download of child pornography on her work computer, which I had no access to, they still chose to pursue me, instead of her, for this crime.

The Disciplinary Board of the
Supreme Court of Pennsylvania
Page -3-

A third matter which we discussed in my defense strategy was the fact that my
neighbor set up our home internet networking and my ex-wife gave this neighbor full
access to same. At that time, he was employed by the company that provided our
internet service so he had plenty of experience with internet access and programs
which would be utilized to gain access to a person's I.P. address information. My
attorneys vaguely mentioned this information and never provided the jury the details
which we discussed to prove that not only was it possible that he was using my internet
service but he boasted to the neighbors that he did so. Again, providing an alternate
theory for the crime. Simply being the name on the billing account doesn't make you
guilty of a crime.

Over the course of these events, S.A. Emily Evans, from Homeland Security, has
kept in daily contact with my ex-wife as well as her brother. Although Agent Evans
questioned my ex-wife, she refused to acknowledge my limited knowledge of computers
and ignored the fact that my ex-wife and my neighbor both have extensive computer
knowledge and were more than capable of not just understanding but implementing the
programming necessary to pursue this on-going crime. This same Agent, Emily Evans,
inventoried the items taken during the search of my home on July 24, 2013. Oddly,
Agent Evans did not turn in my Dell computer at the same time as the other items taken
from my home on that day. Rather, she turned in my Dell computer on August 5, 2013.
There is no mention as to why she kept my Dell computer for the additional time. And, it
should be noted, this Dell computer was returned to me after the government's
computer expert was done with it because, as stated in the search warrant, devices
without contraband would be returned and, as it contained no contraband, it was
returned – as in the previous 2 searches as well. During the December 2018 search,
the same Dell computer was, again, seized by the government, a search performed
again by Agent Evans, where the Judge, at trial, noted that the seal from the 2013 was
not broken, therefore, it was not used after it was returned from the government, but
was somehow now frozen. Obviously, this was not from my doing but from something
that the government computer expert, or, possibly, Agent Evans, had done to the
computer during the lapse in time before turning it in to be examined as the computer,
itself, had no contraband, however, the "mirror image" that the government had in their
system had a "chat fragment" that was not found on the computer, itself. See Exhibit
"C" 2013 inventory timeline.

At the time of my trial, the computer expert that I hired stated the ease at which
someone could copy my home networking and be on the other side of the planet and
still look like it was being transmitted by my computer, simply by copying my I.P.
address. This was a fact not disputed by the government's computer expert. All of
which was ignored by the government's counsel and my counsel.

The Disciplinary Board of the
Supreme Court of Pennsylvania
Page -4-

One more important issue which affected my ability to defend myself is my mental health. Prior to my arrest, I had been taking medication for depression and anxiety. Immediately following my incarceration, the prison in Philadelphia refused to give me my medication. Over time, I was able to get some medication for my depression and anxiety but I am still not being dosed appropriately and during my trial, was not provided ANY of my medication because the transfer from the Philadelphia prison to the Lehigh County prison did not afford enough time for Lehigh County to obtain my medication in time for my trial to start. My attorneys were well aware of this and did not take steps to make sure that I was medicated and above to participate in my defense as necessary.

Since the time of my trial, I was made aware that Mr. Donato wishes to withdrawal as my counsel. He has made certain allegations which are not just false but out-right lies. I have a hearing on this matter on Monday, November 25, 2019, and these allegations will be addressed at that time.

Accordingly, I would like to file a formal complaint against the lead attorney in my defense, Mr. Arthur T. Donato, as well as the attorney for the Government, Mr. Albert Glenn. Mr. Donato did not defend me as he stated he would and he went completely rogue when it came to my defense as we planned – further, when I asked him if I could bring up these issues while on the stand, he told me that I could not and that I could only answer his specific questions and not stray with my answers. With regard to Mr. Glenn, he completely disregarded the evidence that he had in his possession which points to other actors and not just charged me with this crime but didn't introduce or explore evidence pointing, specifically, to other actors.

Thank you for taking the time to review my letter and please feel free to reach out to my Power of Attorney, Timothy J. Lager, if you have any questions regarding the above or the attached or if you need anything additional. He has daily contact with me and can ask any questions or obtain any further details you may need.

Very truly yours,

agent for John J Krasley

John J. Krasley

Enclosures

20

FD-302 (Rev. 10-6-95)

- 1 -

07/01/2009

**FEDERAL BUREAU OF INVESTIGATION**

Date of

transcription

Investigation on                              at

File #                                                                     Date dictated

by

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to

your agency;

it and its contents are not to be distributed outside your agency.

KIMBERLY ANN KRASLEY, white female, born
Social Security Account Number                    , residing at 3348
Willow Run Road, Kutztown, Pennsylvania 19530, was interviewed at
her home.  After informing KRASLEY of the official identities of
the interviewing agents and the nature of the interview, she
voluntarily provided the following information:

KRASLEY has been married to JOHN KRASLEY since May 10,
1996.  They do not have any children, but do have several nephews
and nieces.

JOHN KRASLEY has both Facebook and MySpace pages.  JOHN
KRASLEY uses Facebook to keep in touch with some guys and with a
girl named TRACY Last Name Unknown (LNU) that he knew from high
school.

The only nickname for JOHN KRASLEY that KRASLEY is aware
of is the one she uses: SXB, which stands for "sexy boy."

JOSH LNU, CLAYTON LNU, and TRAVIS LNU are names of her
neighbor's sons.  TRAVIS LNU graduated from high school, but still
lives with his parents and works at Giant.  the KRASLEYs are not
especially close to TRAVIS LNU.

KRASLEY is aware of the following email addresses being
used on her computers:  kras30@ptd.net; jkras@ptd.net;
joebickley@spectrum108.com; and, kimkrasley@spectrum108.com.
KRASLEY was not sure about screen names being used, but mentioned
"meformy" and "youforme" as being familiar to her.

In approximately August 2005, the Pennsylvania State
Police (PSP) searched KRASLEY's house and took computers pursuant
to a search warrant for child pornography.  The KRASLEYs hired an
attorney and there was only one thumbnail picture found on a work
computer.  At the time, KRASLEY was not using wireless technology
and said her nephew, JAMES KRASLEY, JR., had been responsible for
the child pornography.  Her nephew is now away at college and they
presently use a wireless set-up.  KRASLEY has secured the wireless
set-up by only giving access to the MAC addresses of their
computers.  Service Electric is KRASLEY's internet service
provider.

06/19/2009       Kutztown, Pennsylvania

n/a

SA Pamela S. Kirschner:psk
SA Andrea P. Manning

Exhibit "A"



21

KRASLEY made a point of reiterating that after the PSP searched their home, they took steps to make sure that nobody else was using their computers, including switching to a secured wireless set-up and no longer allowing either the neighbor children or other family members access to their computers.

There are four desktop computers and one laptop computer in KRASLEY's home. KRASLEY uses the laptop for work. It is only a few months old. JOHN KRASLEY's computer was purchased on a "one year same as cash" promotion. They also have an external hard drive and several flash drives. Two of which KRASLEY provided during the interview. JOHN KRASLEY has asked KRASLEY for help on their computers in the past. The computers have both logins for "KIM" and "JOHN" on them.

KRASLEY and her husband used to host major picnics for their family and neighbors on the Fourth of July, and often on Sundays.

JOHN KRASLEY does not like sports. JOHN KRASLEY went back to school for engineering maintenance, but presently works on a mill deck.

JOHN KRASLEY was arrested a few years ago when he was with a friend who used a fake $5.00 coupon that he (the friend) had created.

KRASLEY takes several prescribed medications for asthma, stress, and anxiety.

### ADMINISTRATIVE

KRASLEY stated she had given wireless network access to a neighbor during the original interview; however, Special Agent Rosemarie Vesci later overheard KRASLEY tell other agents that she had not given access to anyone for their wireless network.



**Pennsylvania Steel Company, Inc.**
INCORPORATED

P.O. Box 40
1717 Woodhaven Drive
Bensalem, PA 19020

FAST DEPENDABLE SERVICE

Please Call or Fax your next inquiry
800-999-2997 • www.pasteel.com • Fax 215-633-9601

John — I am so sorry for all the
trouble I have caused you. I never
meant to hurt anyone, especially you.
You have given me my best years. I
never would have been able to feel
and do so many things that life
had to offer. From your love + hard
work, you gave me a home,
security and unconditional love.
Please keep being a good person, who
helps others and family. Your only
true fault is the love of your fireworks.
like most men. Please forgive me for
looking at porn on the internet, I
never meant to hurt you or anyone.
I never knowingly or intentionally
downloaded or looked at children.
I hope you and everyone would
know — I would never do this. For
I would never hurt anyone, I am
more than ashamed for what I have

| COLD FINISHED BAR | STRUCTURALS | EXPANDED METAL |
| STAINLESS STEEL | SHEET/PLATE | GRATING |
| ALUMINUM | TUBE/PIPE | COPPER |
| HOT ROLLED BAR | TOOL STEEL | BRASS/BRONZE |

Exhibit "B"

23



**Pennsylvania Steel Company, Inc.**

P.O. Box 40
1717 Woodhaven Drive
Bensalem, PA 19020

## FAST DEPENDABLE SERVICE

Please Call or Fax your next inquiry
800-999-2997 • www.pasteel.com • Fax 215-633-9601

and using them on yourself and saying
horrible things about me and your
nieces that you do to us. This is
what I keep hearing in my head
over and over again, it won't stop.
Now I have no trust in them or any
law enforcement. I keep hearing them
say do you know what they'll do
to you in jail? For over 4 weeks all
I can do is wait and watch for something
to happen and I don't want you to
be blamed for my doings. I can not
eat, sleep or feel safe in our own home.
All I can do is bite my mouth pick my
scabs and smoke. I don't want
to go to jail and be abused. I feel
I have been a good friend to our
neighbors until now that I can't tell
them what is going on and they
know something is wrong. I thank you
and our friends and my family for

COLD FINISHED BAR        STRUCTURALS        EXPANDED METAL
STAINLESS STEEL          SHEET/PLATE        GRATING
ALUMINUM                 TUBE/PIPE          COPPER
HOT ROLLED BAR           TOOL STEEL         BRASS/BRONZE

24



**Pennsylvania Steel Company, Inc.**

INCORPORATED

P.O. Box 40
1717 Woodhaven Drive
Bensalem, PA 19020

## FAST DEPENDABLE SERVICE

Please Call or Fax your next inquiry
800-999-2997 · www.pasteel.com · Fax 215-633-9601

I am not sure who
I am anymore, I believe
I AM NOT me and
never was.

| COLD FINISHED BAR | STRUCTURALS | EXPANDED METAL |
| STAINLESS STEEL | SHEET/PLATE | GRATING |
| ALUMINUM | TUBE/PIPE | COPPER |
| HOT ROLLED BAR | TOOL STEEL | BRASS/BRONZE |

25

# CUSTODY RECEIPT for SEIZED PROPERTY and EVIDENCE

Handbook 5200-09

| 1. FPF No. | 2. Incident No. |
| --- | --- |
| 2 0 1 3 1 1 0 1 5 0 0 0 4 7 4 5 0 | 2 0 1 3 5 6 0 0 9 2 7 3 4 2 |
| 3. Investigative Case No. | 4. Enforce No. |
| P 1 1 0 7 0 2 1 8 2 4 6 0 1 7 | |

| 5. Prior Detention? | 6. Date Seized (mm/dd/yyyy) | 7. Time Seized (Use 24 Hrs) | 8. FDIN/Misc. |
| --- | --- | --- | --- |
| Yes ☐ No ☑ If yes, CBP 6051D No. _____ | 07 24 2013 | 1130 hrs. | |

| 9. Seized From: | 10. Entry No. | 11. Seal or Other ID Nos. |
| --- | --- | --- |
| Name: John KRASLEY | | |
| Address: 3245 Willow Run Road | 12. Remarks: |
| Kutztown, PA 19530 | Forensics |
| | 11-15-18 Returned |
| Telephone No. ( ) Ext: | |
| 13. Send Correspondence to: | |

**14. PROPERTY** ( By Line Item) Attach CBP Form 58 if conveyance

| a. Line Item No. | b. Description | c. Packages Number | c. Packages Type | d. Measurements Qty. | d. Measurements UM | e. Est. Dom. Value |
| --- | --- | --- | --- | --- | --- | --- |
| 001 | Lenovo laptop | 1 | box | 1 | ea | $ |
| 002 | Toshiba laptop | | | 1 | ea | $ |
| 003 | Dell CPU tower | — | —— | 1 | ea | $ |
| 004 | Asus CPU tower | —— | —— | 1 | ea | $ |
| 005 | 1 PAD | | | 1 | ea | $ |
| 006 | Seagate external HD | | | 1 | ea | $ |

| 15. Seizing Officer | | | |
| --- | --- | --- | --- |
| Corey Evans | **X** ~~signature~~ | | 07 24 13 |
| Print Name | | Signature | Date |

**16. ACCEPTANCE / CHAIN OF CUSTODY**

| a. Line Item No. | b. Description | c. Print Name/Title/Organization | d. Signature | e. Date |
| --- | --- | --- | --- | --- |
| 1,2,3-14 112 | 1st dev box, 2 cpu s | KRamuse/HSI/HSI | | 7/14/13 |
| 001-014 015 | 1-Seal Box 2-CPUs | Munyon/SA/HSI | | 8/5/13 |
| 3-14 | 2 CPU Towers | Krauss/SI/SI/HSI | | |
| 003 004 | 2 CPU Towers | Munyon/SA/HSI | | 12/17/13 |
| 005-012 | 1PAD/CD-DVD Roms | Kim Krasley | | 10-3-13 |

CBP Form 6051A Continuation Sheet Attached? Yes ☐ No ☐

CBP Retains Original

CBP Form 6051S (03/04)

Exhibit "C"

26

**CUSTODY RECEIPT FOR**
**DETAINED OR SEIZED PROPERTY**
**Continuation Sheet**

Handbook 5200-09

1. Page ___2___ of ___3___

2. DHS Form 6051S or D No. _4470544_

| 3. FPF Number | 4. Investigative Case Number or IA File Number |
|---|---|
| 2013110100047401 | PHG7GRG9PHG024 |

| 5. PROPERTY (By Line Item) Attach DHS Form 58 if conveyance | | | | | | | | FOR DETENTIONS ONLY | |
|---|---|---|---|---|---|---|---|---|---|
| a. Line Item No. | b. Description | c. Packages | | d. Measurements | | e. Est. Dom. Value | | f. Samples sent to DHS Lab | |
| | | Number | Type | Qty. | UM | | | | Date |
| 007 | Thumbdrives | 1 | bg | 9 | JA | $ | | Yes ☐ No ☐ | /  / |
| 008 | SD cards | 1 | bg | 15 | PA | $ | | Yes ☐ No ☐ | /  / |
| 009 | Motrola cell | 1 | bg | 1 | JA | $ | | Yes ☐ No ☐ | /  / |
| 010 | cell phones | 1 | bg | 8 | PA | $ | | Yes ☐ No ☐ | /  / |
| 011 | Digital camera | 1 | bg | 1 | PA | $ | | Yes ☐ No ☐ | /  / |
| 012 | CD/DVD Rems | 1 | bg | 84 | PA | $ | | Yes ☐ No ☐ | /  / |
| 013 | Zip disks | 1 | bg | 115 | JA | $ | | Yes ☐ No ☐ | /  / |
| 014 | SIM card | 1 | bg | 1 | JA | $ | | Yes ☐ No ☐ | /  / |
| 019 | Nikon camera | 1 | bg | 1 | PA | $ | | Yes ☐ No ☐ | /  / |
| | | | | | | $ | | Yes ☐ No ☐ | /  / |
| | | | | | | $ | | Yes ☐No☐ | /  / |

| 6. ACCEPTANCE/CHAIN OF CUSTODY | | | | |
|---|---|---|---|---|
| a. Line Item No. | b. Description | c. Print Name/Title/Organization | d. Signature | e. Date |
| 001-004 006-011 013-014 019 | As above | Kim Krasley | Kim Krasley | 1-9-14 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DHS retains original
Previous editions are obsolete

DHS Form 6051A (08/09)



<u>HOLD HARMLESS RELEASE AGREEMENT</u>

PH07QR13PH 0017

Customs Case No.: 2013110100047401

2013520098734O1

Property: John Krisley Computer media

Released to: Kim KRMSLEY

Date of Release: 1-9-2014

In consideration of the release of the above listed property to the above named party, I, _____ hereby release and forever discharge the United States, its officers, agents, servants, and employees, their heirs, successors, or assigns, from any and all action, suits, proceedings, debts, dues, contracts, judgments, damages, claims, and/or demands whatsoever in law or equity which I, my heirs, successors, or assigns, ever had, now have, or may have in the future in connection with the detention, seizure, and/or release by U.S. Customs and Border Protection of the above listed property.

I further agree to hold and save the United States, its officers, agents, servants and employees, their heirs, successors, or assigns, harmless from any claims by any others, including costs and expenses for or on account of any and all lawsuits or claims of any character whatsoever in connection with the detention, seizure, and/or release by U.S. Customs and Border Protection of the above listed property.

By accepting this remission decision, petitioner understands that he/she is waiving any claim to attorney's fees, interest or any other relief not specifically provided for in this decision.

Name: <u>Kimberly Krasley</u>

(Please Print)

Address: <u>3348 Willow Run Rd Kutztown PA</u>

Signature: _____

Date: <u>1-9-14</u>

SUBSCRIBED BEFORE ME:

this ____ day of _____, 19__

Notary Public _____

(Print Name)

Notary Public _____

(Signature)

My Commission Expires: _____

28