UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 5:18-cr-545 |
| : | No. 5:24-cv-780 |
| : | |
| JOHN JOSEPH KRASLEY : | |

**O P I N I O N**
Amended Motion to Vacate Sentence under 28 U.S.C. § 2255, ECF No. 142 – Denied

**Joseph F. Leeson, Jr.**                                                                                   **August 26, 2025**
**United States District Judge**

I.   **INTRODUCTION**

John Joseph Krasley seeks to vacate his sentence arising out of his conviction for child pornography related offenses. The relief he seeks is premised on four separate grounds of ineffective assistance of counsel. Following an evidentiary hearing and careful review of the record, the Court finds that Krasley has failed to meet his burden on any of those four grounds.

II.  **BACKGROUND**

On November 29, 2018, a grand jury returned an indictment charging John Joseph Krasley with fourteen child pornography related offenses including distribution, access, receipt and transportation in violation of 18 U.S.C. § 2252. *See* ECF No. 1. The indictment arose out of an investigation by the Department of Homeland Security during which undercover agents downloaded images of child pornography from a device using an Internet Protocol ("IP") address associated with Krasley's residence. In the course of their investigation, government agents also obtained a Title III intercept of Krasley's home internet connection through which investigators

could see Krasley access child pornography. The Third Circuit framed the crux of the trial as follows:

> Krasley did not dispute that his internet connection was used to view and traffic child pornographic material for the charged offenses, but he denied that he was the person who committed the offenses. A central issue at trial was therefore "whether the internet activity that [the Government] charged occurred from someone in Mr. Krasley's house, i.e. Mr. Krasley, or someone outside Mr. Krasley's house ... [who] wasn't him." To that end, the Government introduced two sets of evidence to show that the internet connection used for the charged offenses was accessed from within Krasley's residence, as opposed to somewhere outside of Krasley's residence. First, the Government introduced the titles of two deleted video files on a thumb drive that was seized during the 2018 search of Krasley's residence. The video files were created in November 2010. The Government could not view the videos themselves, but the titles were "consistent with child exploitation." Second, the Government introduced deleted "internet relay chat" messages that were recovered from the hard drive of a desktop computer seized during the 2013 search of Krasley's residence. The chat messages discussed the trading of child exploitation material, and were also from November 2010.

*United States v. Krasley*, No. 21-1364, 2022 WL 2662045, at *1 (3d Cir. July 11, 2022) (footnotes omitted).

On October 31, 2019, Krasley was found guilty of all charges. *See* ECF No. 87. On February 16, 2021, the late Judge Edward Smith sentenced Krasley to 240 Months of imprisonment to be followed by a ten-year term of supervised release. *See* ECF No. 118. On August 16, 2022, the Third Circuit affirmed the conviction and sentence on appeal. *See* ECF No. 135. On February 21, 2023, Krasley's Petition for Writ of Certiorari was denied by the Supreme Court of the United States. *See Krasley v. United States*, 143 S. Ct. 840, 215 L. Ed. 2d 84 (2023) (cert. denied).

On February 21, 2024, the Petitioner filed a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 which was amended on February 26, 2024. *See* ECF No. 142. The Government filed a response on August 12, 2024. *See* ECF No. 151. The Petitioner filed a reply on November 12, 2024. *See* ECF No. 161. On June 18, 2025, the Court held an evidentiary

hearing, rendering this matter ripe for disposition. For the reasons that follow, the Amended Motion will be denied.

## III. LEGAL STANDARDS

### A. Motion to Vacate under 28 U.S.C. § 2255 –Review of Applicable Law

Motions filed under 28 U.S.C. § 2255 are the presumptive means by which federal defendants can challenge their convictions or sentences that are allegedly in violation of the Constitution or laws of the United States or are otherwise subject to collateral attack. *Davis v. United States*, 417 U.S. 333, 343 (1974); *O'Kereke v. United States*, 307 F.3d 117, 122-23 (3d Cir. 2002). Section 2255 "states four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255(a)). There is a one-year period of limitations to § 2255 motions that runs "from the latest of ... the date on which the judgment of conviction becomes final...." 28 U.S.C. § 2255(f).

### B. Ineffective Assistance of Counsel –Review of Applicable Law

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). There is a strong presumption that counsel is effective and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions. *Id.* at 689 (explaining that courts should not second-guess counsel's assistance"). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110

(2011) (internal quotations omitted). The court must consider the totality of the evidence, and the burden is on the petitioner. *Strickland*, 466 U.S. at 687, 695.

IV.     **ANALYSIS**

Krasley argues that he was denied his right to effective assistance of trial counsel under the Sixth Amendment of the Constitution. In the Amended Motion, Krasley puts forward four grounds for relief. *See* ECF No. 142. However, in his proposed findings of fact and conclusions of law, he argues only the second ground. *See* ECF No. 172. While it is not clear whether Krasley intends to forgo the other grounds, the Court will nevertheless address each in turn.

   A.     **Ground One: Alibi Defense**

Krasley argues that his trial counsel was ineffective for failing to investigate, acquire and present potential alibi evidence which would have placed him outside of his home while the IP address was being used for the charged activity. The supposed alibi evidence Krasley offers are EZ-Pass records showing that a transponder linked to his account was charged at toll stations far away from Krasley's home on dates and times in which Gigatribe was accessed. *See* ECF No. 146, Ex. 4. However, Krasley has failed to show prejudice because the evidence he offers is not exculpatory. Thus, there is no reasonable probability that but for counsel's failure to present this evidence, the result of the proceeding would have been different. *See Berryman v. Morton*, 100 F.3d 1089, 1101 (3d Cir. 1996). Following the evidentiary hearing, the Court makes this finding on the following two bases.

        1.      The relevant EZ-Pass transponder belonged to Krasley's wife

First, the EZ-Pass transponder Krasley relies upon belonged not to him but to his ex-wife Kim. Attached to his Amended Motion are roughly thirteen pages of EZ-Pass records for Krasley's account. *See* ECF No. 146, Ex. 4. He has highlighted several entries of those records

spanning from June 2015 to December of 2018.  However, *each and every one* of the highlighted entries is under the transponder number 602661718.  That transponder corresponds to a vehicle with the PA license plate HBM0845.  *See id*. at 7.  That plate, in turn, corresponds to a Ford vehicle registered to the company Spectrum Automated.  *See* Gov. Ex. K3. Spectrum Automated is/was run by Krasley's now ex-wife, Kim Krasley and her brother.  *See* N.T. 6/18/2025 ("Ev. Hearing") at 81:19-82:9.  Connecting all the dots, it is evident that the transponder Krasley relies upon belonged not to him but to his ex-wife Kim.  Accordingly, Krasley has demonstrated no prejudice where the evidence offered does not tend to show he was away from the home when the relevant conduct was occurring.

    2.  The specific dates relied upon are non-exculpatory or contradicted by photo evidence

Second, the specific EZ-Pass dates or times relied upon are either non-exculpatory or contradicted by photo evidence of Krasley simultaneously near his residence.  Through the exhibits attached to his Amended Motion, Krasley appears to focus on two sets of EZ-Pass dates: May 20-22, 2016, and January 25, 2018.  The Court addresses each in turn.

    a.  Weekend Pittsburgh trip of May 20-22, 2016

The EZ-Pass records purport to show the transponder ending in 1718 entering the Carlisle PA Turnpike interchange at 12:29:38 on Friday, May 20, 2016, and exiting the Turnpike at the Pittsburgh interchange at 15:41:11 that same day.  *See* ECF No. 146, Ex. 4 at 2.  The EZ-Pass records then purport to show a return trip on Sunday, May 22, 2015, whereby the transponder enters the Turnpike at the Pittsburgh interchange at 10:50:08 and exits at the Allegheny Valley interchange just nine minutes later.  *See id*.  Then, the transponder enters the Turnpike again at New Stanton at 16:33:53 and exits at 19:48:36 in Carlisle.  *See id*.

The government offered photo evidence showing Krasley outside of his house on the dates roughly corresponding with the weekend trip to the Pittsburgh area. *See* Gov. Exs. A2, B2, C2. Thus, in addition to the evidence showing that the relevant transponder belonged to Kim, any inference that Krasley was driving the vehicle on that weekend trip is also negated by the pole camera footage which shows Krasley outside of his house in Kutztown on: 1) Friday, May 20, 2016, at 11:51:53, *see* Gov. Ex. A2; 2) Saturday, May 21, 2016, at 12:47:58, *see* Gov. Ex. B2; and 3) Sunday, May 22, 2016, at 8:08:51, *see* Gov. Ex. C2.

          b.       January 25, 2018, EZ-Pass trip

Krasley also offers excerpted EZ-Pass records from January 25, 2018, another date on which excerpted pen tele data showed Krasley's IP address was used to access Gigatribe. *See* ECF No. 146, Ex. 4 at 5. The exhibit relied upon provides logs showing access to Gigatribe on January 25, 2018, beginning at 20:45 and lasting until 21:07. *See id*. The EZ-Pass excerpt shows the transponder ending in 1718 entering the highway in Lehigh Valley at 18:58:00 and exiting at the Mid-County toll plaza at 19:25:14. *See id*. Later that same day, the EZ-Pass excerpt shows a return trip commencing around 23:13:59. *See id*. Thus, the implication is that Krasley had an unpresented alibi if the EZ-Pass records show he was on the road or away from home when Gigatribe was accessed.

This evidence suffers from two faults. First, again, the transponder charged corresponds to Kim's vehicle, not Krasley's. Second, Gigatribe is located in France and uses Greenwich Mean Time (GMT) which is five hours ahead during Daylight Savings Time. Thus, the 20:45 access on January 25, 2018, would correspond to 15:45 Eastern Standard Time. Accordingly, the evidence cited is not exculpatory because it does not tend to show Krasley was away from his home when Gigatribe was accessed.

Upon consideration of the evidence presented during the June 18th hearing, as well as the trial evidence in this case, the Court finds that there is no "reasonable probability" the result of Krasley's trial would have been different had trial counsel presented the EZ-Pass evidence because that evidence had no exculpatory value. *United States v. Little*, No. CIV.A. 12-2005, 2013 WL 2973650 at *6 (E.D. Pa. June 17, 2013) (denying a Motion to Vacate where the alibi evidence proffered was not in fact exculpatory). Because Krasley cannot demonstrate prejudice, the Court need not address the reasonableness of his counsel's representation. *United States v. Travillion*, 759 F.3d 281, 294 (3d Cir. 2014).

    **B.**    **Ground Two: Alternate Suspect — Kim Krasley**

Next, Krasley argues that Donato was ineffective in both his investigation of Kim and his decision not to make her the focal point of Krasley's defense. Krasley notes essentially two pieces of evidence connecting Kim to the crimes. First, CSAM was previously found on Kim's work computer. Second, in the course of their investigation, law enforcement officers recovered a note from Krasley's safe, purportedly written by Kim, and, in full, reading:

> John – I am so sorry for all the trouble I have caused you. I never meant to hurt anyone, especially you. You have given me my best years. I never would have been able to feel and do so many things that life had to offer. From your love and hard work, you gave me a home, security and unconditioned love. Please keep being a good person who helps others and family. Your only true fault is the love of your fireworks. Like most men. Please forgive me for looking at porn on the Internet. I never meant to hurt you or anyone. I never knowingly or intentionally downloaded or looked at children. I hope you and everyone will know I will never do this. For I would never hurt anyone. I am more than ashamed for what I have done. I may be the reason for all the problems you have in having with the Internet troubles. I know it was not you from fact and in my heart. I am so ashamed for looking at adult porn on the computer. I thought it would help me be able to enjoy and understand why I can't become really pleasured. I wasn't anything you've done. I love you, and I am sorry I couldn't be a better wife for you. I wish I would have seeked [sic] a sexual counselor. Before all of this, I thought I was a good person until this last time. All I can hear in my head is all the stuff that the officer was saying about you and to you. And it makes me sick and feel terrible. When he and the sidekick kept saying about taking the guns downstairs and using them on yourself and saying horrible

things about me and your nieces that you do to us. This is what I keep hearing in my head over and over again. It won't stop. Now, I have no trust in them or any law enforcement. I keep hearing them say, 'Do you know what they'll do to you in jail?' For over 4 weeks, all I can do is wait and watch for something to happen, and I don't want you to be blamed for my doings. I cannot eat, sleep, or feel safe in our own home. All I can do is bite my mouth, pick my scabs, and smoke. I don't want to go to jail and be abused. I feel I have been a good friend to our neighbors until now, that I can't tell them what is going on and they know something is wrong. I thank you, and our friends, and my family, for being so caring and understanding about my illness. I learned to adjust to the neck pain and headaches and live with them. I always still had the fear of falling and bumping my head, but this was just normal fears. Today, the way the world is, you can't let yourself feel safe anymore. We can't trust our elected officials because later you find out they are corrupt. Our Government has destroyed our economy and left good people out on the streets defending against the weather, food for there [sic] family, and safe homes. Please forgive me for I have not been a good person. I have lived a lie. I believe I have done wrong. My life is false. I am not sure who I am anymore. I believe I am not me, and never was.

Gov. Ex. L. Notwithstanding, Donato chose not to present a defense which would have pointed to Kim as the actual culprit. After careful review of the record and testimony at the evidentiary hearing, the Court finds that Krasley was not denied effective assistance of counsel on these grounds.

        1.        Reasonableness of Donato's Investigation into Kim

At times, Krasley pitches his argument as a failure to investigate. *See* Am. Mot. at 22 ("The original defense team *failed to thoroughly investigate* forensic clues pointing to other potential perpetrators, notably the information implicating Kim Krasley.") (emphasis added). This is analytically distinct from a failure to present a witness and/or a specific Kim-based defense. Indeed, "the 'failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation." *Travillion*, 759 F.3d at 293 n.23 (quoting *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir.1980)). However, Krasley does not explain what was deficient about Donato's investigation. In other words, he does not explain what avenue of *inquiry* Donato unreasonably forewent and what that inquiry would have yielded.

Instead, his argument appears to be that Donato's decision not to point the finger at Kim was rooted in only an "unverified hunch," *see* ECF No. 172 at ¶ 65, that Kim did not fit the profile of someone who might view male-on-male CSAM.  There are two problems with this argument.

First, Donato credibly testified that this assessment was based not just on his own intuition but on the consultation with a forensic psychologist.  Ev. Hearing at 66:15-16.  Second, Donato never intimated that middle-aged women are *never* the perpetrators of this sort of crime.  Rather, his testimony was that these crimes are "almost always" perpetrated by men.  *Id*.  This is a sentiment shared by Special Agent Evans.  *Id*. at 103:17-20; 106:23-107:5.  Thus, it does not appear Krasley takes issue with Donato's investigation so much as he takes issue with the strategic decisions he made *following* the investigation.  The reasonableness of that strategic decision is addressed in the section that follows.

Notwithstanding, based on the record, the Court finds that Krasley has failed to show Donato's investigation was constitutionally deficient.  During his investigation, Donato also: 1) received and reviewed a report of a law enforcement interview with Kim in which Kim indicated that she wrote the alibi letter at Krasley's prompting, *see id*. at 54:14-23; 2) reviewed the alibi letter itself "multiple times," *see id*. at 54:24-25; 72:25; 3) interviewed Kim who said that she would testify that the alibi letter was prompted by Krasley, *see id*. at 65:25-66:7; and 4) assessed both Kim's credibility and how she might present to the jury, *see id*. at 75:12-17.  Accordingly, the Court finds Krasley has failed to demonstrate Donato performed an objectively unreasonable investigation of Kim as the true culprit.

       2.    Trial counsel's decision not to pursue a defense centered around Kim as the actual culprit

Next, Donato's strategic decision not to pursue Kim as the culprit at trial was not objectively unreasonable. "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681–82 (3d Cir. 2006). As noted, Donato's strategic decision not to pursue Kim as the true perpetrator or call her to the stand was made after a reasonable investigation of the viability of that defense.

On the basis of his investigation, Donato chose to instead explore the possibility of an unknown party remotely accessing Krasley's network. To that end, Donato intended to draw on the fact that the Government, on three prior occasions, had searched Krasley's devices but found no CSAM. Ev. Hearing at 51:11-52:3. Donato also combined this argument with numerous character witnesses. *Id*. at 64:5-7. More particular to the decision not to point the finger at Kim, at the evidentiary hearing, Donato explained his reasoning as three-fold.

*First*, Donato knew that the substance of the note would be contradicted by Kim herself, thereby pointing the blame back at Krasley. As noted, this knowledge was premised upon Donato's review of a Department of Homeland Security report of an interview with Kim in which she admitted to writing the note at Krasley's convincing. *See* ECF No. 154, at Ex. H. It was also premised on his pre-trial conversation with Kim in which she indicated that, if called, she would testify that "he made her" write the letter. Ev. Hearing at 65:24-66:7.

*Second*, he felt that a jury was not likely to believe that Kim, a middle-aged woman, fit the profile of one who would view male-on-male CSAM. Ev. Hearing at 66:10-19. This was premised on his own intuition and experience as well as his consultation with a forensic psychologist. *Id*.

*Third*, he felt it would be a "bad look" for Krasley to offer his wife as the actual culprit. *Id*. at 65:21-23.  This impression rested on a confluence of circumstances from which a reasonable jury might infer that the note was "plant[ed]." *Id*. at 74:25-75:4.  In particular, Donato noted the forthcoming testimony that the note was written at Krasley's prompting, *see id*. at 65:24-66:7, the fact that Krasley never took the note to the police or reported that his wife previously viewed CSAM, *see id*. 75:25-76:2, and the fact that the note was found in Krasley's possession long after Kim had moved out, *see id*. 74:19-75:4.

Donato's strategic decision is owed significant deference because it followed a reasonable investigation.  *See McAleese v. Mazurkiewicz*, 1 F.3d 159, 172 (3d Cir. 1993) (quoting *United States v. Gray*, 878 F.2d 702, 710 (3d Cir.1989) ("'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable'").  Through *Strickland's* deferential lens, the Court finds that Donato's strategic decision not to center the defense around Kim as the actual culprit was not objectively unreasonable.  At bottom, trial counsel was in the unenviable yet familiar position of choosing a trial strategy in the face of overwhelmingly troubling facts.  However, that does not render his assistance ineffective.  Because the Court finds that Krasley has failed to satisfy the first element of *Strickland*, it need not address the second.  *See Travillion*, 759 F.3d at 294.

    C.    **Ground Three: Third Party Remote Access**

In ground three, Krasley claims his trial counsel was ineffective for "disregarding the technical possibility of remote access and manipulation." Am. Mot. at 23.  This is phrased as both a failure to investigate and a failure to present evidence of remote access.

Under *Strickland*, defense "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466

11
082625

U.S. at 691. Here, Krasley has not shown Donato's investigation was unreasonable where it is clear that Donato indeed explored the possibility of remote access and malware. To that end, the Defense hired Cornerstone Discovery, a legal consulting firm. At trial, Kyle McArdle, a digital forensic examiner, testified that he was tasked with "researching various possibilities as to how someone could access an internet network and whether in fact that could've happened or did happen." ECF No. 124, N.T. 10/30/2019, at 10:5-10. At trial, McArdle also testified as to various "malicious" ways one could gain unauthorized access to a network through different "attack vectors." *Id*. at 10:25-12:15. McArdle prepared a report in conjunction with his testimony. *See* ECF No. 154, at 78-96.

Nevertheless, Krasley now claims ineffective assistance of counsel for failing to present evidence or testimony concerning *particular types* of malicious third-party access — namely, RATs, DNS poisoning, proxy devices, and/or remote access trojans.

The Court notes two items in this regard. First, at the evidentiary hearing, McArdle testified that he investigated, among others, the RAT theory of access but did not find anything suspicious, *see* Ev. Hearing at 22:21-23:4, and conducted a pre-hearing malware scan which yielded no evidence of any third-party access, *see id*. at 23:20-24:1. Second, Krasley himself has not produced evidence of such attacks or a report of what an expert on the subject might have testified to.

> To show prejudice that counsel conducted an incomplete investigation, a habeas petitioner:
>> must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result."

*Jones v. United States*, No. CV 14-1557 (WHW), 2018 WL 10016849, at *6 (D.N.J. July 23, 2018) (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996)).

Up to and at the evidentiary hearing, Krasley adduced nothing to this effect.[1] Rather, this theory is pure speculation of the sort routinely rejected by Courts in this Circuit. *See Huggins v. United States*, 69 F. Supp. 3d 430, 446 (D. Del. 2014) (reasoning that speculation about what a witness might have said is in-sufficient to establish prejudice); *Karamanos v. United States*, No. CIV.A. 04-171 (JEI), 2005 WL 2777552 at *3-4 (D.N.J. Oct. 24, 2005) (same); *Johnson v. United States*, 759 F. Supp. 2d 534, 543-44 (D. Del. 2011) (reasoning, in part, that the defendant failed to demonstrate prejudice where he did not provide "evidence that any expert would have provided helpful testimony on this issue at trial"); *United States v. Keller*, No. CIV.A. 12-3766, 2013 WL 6409360 at *7 n.8 (E.D. Pa. Dec. 9, 2013) (finding the defendant failed to demonstrate prejudice arising out of a failure to call an expert witness where the defendant "offer[ed] no description of the intended testimony or explanation of how a defense expert's opinion on these issues would have materially affected the outcome."); *United States v. Lynn*, No. CR 09-279, 2014 WL 7408698 at *3-5 (W.D. Pa. Dec. 30, 2014) (finding no prejudice from trial counsel's failure to call an expert witness where the defendant offered only "vague speculation" of what the testimony would have been).

Accordingly, even if trial counsel unprofessionally erred (and this Court does not make any finding that he did) in failing to pursue *specific* attack vectors, Krasley's speculation falls

---

[1] On August 20, 2025, in conjunction with his Motion to Supplement his Section 2255 Motion, Krasley offered a declaration of Ian Finch, a purported digital forensic expert. *See* ECF No. 174-3. Therein, Finch states that the reviewed data suggests "anomalous internet traffic." *Id*. at 4. At the evidentiary hearing, the Court kept open the record for an additional ten days for the limited purpose of authenticating a piece of discovery previously handed over by the government. Ev. Hearing at 115:15-22. That effort resulted in the July 24, 2025, stipulation. *See* ECF No. 174-4. This declaration falls well beyond the close of the record in this case.

well short of his burden to show a reasonable probability that "'the result of the proceeding would have been different.'" *Hinton v. Alabama*, 571 U.S. 263, 272 (2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)).

> D.   **Ground Four: Inadequate Challenge to Digital Evidence**

In a similar vein, Krasley argues that his trial counsel was ineffective for failing to adequately challenge the digital evidence presented. More particularly, Krasley argues that his counsel: 1) "fail[ed] to delve into the complexities of network security, encryption, and malware, which would have provided alternative explanations for the presence of illicit traffic through Krasley's internet connection"; and 2) "failed to obtain the raw .pcap data from the Government's November/December 2018 pen trap." ECF No. 142-1, at 24.

With regard to the former, it is unclear how this ground materially differs from ground three. Krasley provides "an example," arguing that his trial counsel failed to closely review the evidence connected to the October 13, 2017, offense for which the "Government had no data Gigatribe was accessed from Krasley's IP on this day." *Id*. The Court's analysis on this point is hampered where Krasley did not expand upon this ground in his reply or post-evidentiary hearing findings of fact and conclusions of law.

It is also flawed from the start. In its response, the Government properly points out that Krasley's motion incorrectly states that Count 14 of Krasley's indictment occurred on October 13, 2017. Rather, Count 14 of the indictment occurred on June 27, 2018. *See* ECF 1, at 14. Instead, Count 6 of the indictment occurred on October 13, 2017. *Id*. at 6. That illicit activity was supported not by Gigatribe records but by, *inter alia*, the testimony of Carlton Turner, a member of the FBI's child exploitation task force who testified as to obtaining CSAM via

Gigatribe from an account using Krasley's IP address.  *See* ECF 122 N.T. 10/28/2019 at 109:13-115:6.

Next, Krasley claims that examination of the raw .pcap data associated with the November/December 2018 pen trap "would have allowed [him] to show that his devices were not used to access Gigatribe while the pen trap was being collected despite Gigatribe records that showed otherwise" and that a review of the raw data "would have identified which devices were using Krasley's IP to access Gigatribe." Am. Mot. at 24.  This argument suffers from the same flaw as ground three in that Krasley simply raises the claim in his Amended Motion without supporting his contention with testimony or evidence.  Where a petitioner claims trial counsel was ineffective for failing to present certain evidence at trial, the petitioner "'must make a specific showing as to what the evidence would have been'" and demonstrate that the evidence would have produced a different result had it been presented.  *United States v. Mangiardi*, 173 F. Supp. 2d 292, 315 (M.D. Pa. 2001) (quoting *United States v. Edwards*, No. CRIM. 96-592, 2000 WL 572704, at *5 (E.D.Pa. May 8, 2000)).  Here, Krasley has not, and cannot, show prejudice with such unsupported and speculative arguments.  *See United States v. Ordaz*, No. 08-4746, 2011 WL 13130708, at *5 (E.D. Pa. Feb. 28, 2011) (finding no prejudice where "Petitioner simply raise[d] this claim on his § 2255 form and [did] not present" any supporting evidence.)

Accordingly, Krasley is not entitled to relief on this ground.

**E.     There is no basis for the issuance of a certificate of appealability.**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'"  *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)).  "Where a district court has rejected the

constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

For the reasons set forth herein, Krasley has not shown that reasonable jurists would find this Court's assessment debatable or wrong.

## V.   CONCLUSION

For the above noted reasons, the Court will deny John Joseph Krasley's Amended Motion to Vacate.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge