**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No 5:18-cr-00545 |
| | : | |
| JOHN JOSEPH KRASLEY | : | |

**O P I N I O N**
**Defendant's Motion to Alter or Amend Judgment, ECF No. 178 – Denied**
**Defendant's Unopposed Motion to Expand the Record, ECF No. 183 – Granted in part**

**Joseph F. Leeson, Jr.** **August 25, 2026**
**United States District Judge**

## I. INTRODUCTION

A jury convicted Defendant John Joseph Krasley of fourteen counts of child pornography. He filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (his "2255 Motion"). Over a year after filing the motion, Krasley filed a motion to supplement the 2255 Motion to include a new ineffective assistance of counsel claim. The Court denied the motion to supplement as untimely and the 2255 Motion on its merits. Krasley now files a Motion to Alter or Amend the Court's Order denying his motion to supplement. Krasley argues that this Court made errors of law and fact in the Order. Krasley also seeks to expand the record of his Motion to Alter or Amend to include exhibits to support the motion to alter or amend. For the reasons set forth below, Krasley's Motion to Alter or Amend Judgment is denied, and Krasley's Motion to Expand the Record is granted in part.

## II. BACKGROUND

The following background is from the Opinion denying Krasley's 2255 Motion dated August 26, 2025:

> On November 29, 2018, a grand jury returned an [I]ndictment charging John Joseph Krasley with fourteen child pornography related offenses including distribution, access, receipt and transportation in violation of 18 U.S.C. § 2252. *See* ECF No. 1. The [I]ndictment arose out of an investigation by the Department of Homeland Security during which undercover agents downloaded images of child pornography from a device using an Internet Protocol ("IP") address associated with Krasley's residence. During their investigation, government agents also obtained a Title III intercept of Krasley's home internet connection through which investigators could see Krasley access child pornography. The Third Circuit framed the crux of the trial as follows:
>
>> Krasley did not dispute that his internet connection was used to view and traffic child pornographic material for the charged offenses, but he denied that he was the person who committed the offenses. A central issue at trial was therefore "whether the internet activity that [the Government] charged occurred from someone in Mr. Krasley's house, i.e. Mr. Krasley, or someone outside Mr. Krasley's house ... [who] wasn't him." To that end, the Government introduced two sets of evidence to show that the internet connection used for the charged offenses was accessed from within Krasley's residence, as opposed to somewhere outside of Krasley's residence. First, the Government introduced the titles of two deleted video files on a thumb drive that was seized during the 2018 search of Krasley's residence. The video files were created in November 2010. The Government could not view the videos themselves, but the titles were "consistent with child exploitation." Second, the Government introduced deleted "internet relay chat" messages that were recovered from the hard drive of a desktop computer seized during the 2013 search of Krasley's residence. The chat messages discussed the trading of child exploitation material, and were also from November 2010.

Op. 1–2, ECF No. 176 (quoting *United States v. Krasley*, No. 21-1364, 2022 WL 2662045, at *1 (3d Cir. July 11, 2022)) (footnotes omitted).

On October 31, 2019, "[t]he jury found Krasley guilty of all fourteen counts of transporting, distributing, receiving, and accessing child pornography." *Krasley*, 2022 WL 2662045, at *2; *see also* ECF No. 87. On February 16, 2021, "[t]he District Court [the late Judge Edward Smith] sentenced Krasley to 240 months' imprisonment, followed by ten years of

supervised release." *Krasley*, 2022 WL 2662045, at *2; *see also* ECF No. 118. The Third Circuit affirmed Krasley's conviction on July 11, 2022. *See Krasley*, 2022 WL 2662045, at *2; *see also* ECF No. 135. The United States Supreme Court denied Krasley's Petition for Writ of Certiorari on February 21, 2023. *See Krasley v. United States*, 143 S. Ct. 840 (Mem) (2023) (cert. denied).

Habeas counsel Brandon Sample entered his appearance for Krasley on November 1, 2023. *See* ECF Nos. 136, 138. Krasley filed a 2255 motion on February 21, 2024, exactly one year after his judgment became final, *see* ECF No. 139, and filed an amended 2255 Motion on February 26, 2024, which related back. *see* 2255 Mot., ECF No. 142. The Motion asserted that trial counsel, Arthur Donato ("Donato"), was constitutionally ineffective because he (1) neglected potential alibi evidence; (2) overlooked forensic clues and alternative suspects, including Krasley's wife; (3) disregarded the technical possibility of third party remote access and manipulation; and (4) did not adequately challenge the digital evidence. *See generally id.* On February 26, 2024, habeas counsel emailed the Government to request the full Kismet[1] logs, which the Government sent to habeas counsel on May 14, 2024. *See* Ex. 1, ECF No. 183-1 (email correspondence between habeas counsel and Government counsel from February through May 2024); Ex. 2, ECF No. 183-2 (Government counsel's email noting that she sent the mailing with files). Habeas counsel subsequently confirmed receipt of the files. *See* Ex. 2 (Sample's email dated July 30, 2024). The files included .pcap files[2] from the Government's 2017 Title III Order to intercept internet data from Krasley's PenTeleData account ("the Title III wiretap data"). *See* Ex. B, ECF No. 174-4.

---

[1] Kismet is "a wireless auditing tool" that allowed one "to monitor all of the wireless activity in the area," including cell phones or other digital devices. June 18, 2025 Hr'g Tr. ("Tr.") at 13:11–14:15, ECF No. 170.

[2] A .pcap file is a "packet capture file," which presents "a container to hold all of that packet information." Tr. at 17:6-16.

This Court held an evidentiary hearing on June 18, 2025. The witnesses included Donato, Special Agent James Munjone, Special Agent Emily Evans, and Kyle McArdle, who testified at Krasley's trial and prepared a report with his employer, Cornerstone Discovery, dated October 18, 2019, regarding the digital forensics of the case. *See* June 18, 2025 Hr'g Tr. ("Tr.") at 11:15-25, ECF No. 170; *see also* Ex. J, ECF No. 154. The report presented all the evidence that McArdle reviewed in preparing the report. *See id.* at 12. The report did not refer to the Title III wiretap data. *See generally id.* The Court left the record open for ten days to resolve the issue regarding the Title III wiretap data and requested that the parties file a Stipulation about the data. *See* Tr. at 115:15-22.

The parties produced a Stipulation on July 25, 2025, stating:

> The Government produced a thumb drive to defense counsel in 2024, with .pcap files related to the Title III Order to intercept Internet data transmitting to/from John Krasley's PenTeleData internet account #112358, beginning on November 22, 2017 through December 19, 2017.
>
> HSI Special Agent Emily Evans reviewed the Title III .pcap files with defense attorney Arthur Donato before Mr. Krasley's trial.

Ex. B; *see also* Ex. 5, ECF No. 183-5.

On August 20, 2025, Krasley filed a motion to supplement his 2255 Motion, seeking to add a claim that "trial counsel was constitutionally ineffective for failing to provide his own retained digital forensics expert with the most critical piece of technical evidence in the case: the network traffic data from the Government's 2017 Title III wiretap." Mot. to Suppl. 2, ECF No. 174. He alleged that that the factual predicate of his claim was timely and could only have been discovered "through the testimony at this [June 18, 2025] hearing and the subsequent, court-encouraged cooperation between the parties that the facts supporting this new claim came to

light." *Id.* Krasley attached a declaration from an alleged expert, Ian Finch, to whom he provided the Title III wiretap data on June 19, 2025. *See* Ex. A, ECF No. 174-3.

The Court denied Krasley's 2255 Motion on its merits on August 26, 2025. *See* Op.; 2255 Mot. Order, ECF No. 177. The Court also denied as untimely the motion to supplement on August 26, 2025. *See* Order, ECF No. 175. In doing so, the Court noted that:

> Krasley has not met [his] burden [to supplement his 2255 Motion with a new ineffective assistance of counsel claim]. Here, the factual predicate "is not merely the existence of the Title III .pcap files, but the specific knowledge that [the digital forensic investigator] *never saw them* despite trial counsel having reviewed them." Mot. at 5 (emphasis in original). . . . Krasley, either himself or through habeas counsel, could have, at any time, very simply asked the digital forensic expert [] McArdle what he reviewed prior to trial. Indeed, the Cornerstone Report [] McArdle prepared on October 18, 2019, lists the .pcap files, but no others, as having been reviewed in conjunction with that report. *See* ECF No. 154, Ex. J at 12. If Krasley did not see this other data set included, he could have inquired about the scope of Cornerstone's review as early as 2019. Habeas counsel could have made such inquiries as early as November 2023. Krasley does not explain why this revelation required testimony under oath at an evidentiary hearing. Krasley offered no reason to suggest his own due diligence or that of habeas counsel would not have yielded the existence of the other data set, which was admittedly in the possession of trial counsel before the 2019 [trial]. *See* ECF No. 174-4. Nor has Krasley offered any reason to suggest his own due diligence or that of habeas counsel would not have discovered that this other data set was not provided to [] McArdle. Accordingly, the Motion to Amend is denied because the additional claim is futile where it is time-barred [under 28 U.S.C. § 2255(f)(4)].

*Id.* at 2 n.2.

On September 23, 2025, Krasley filed the Motion to Alter or Amend Judgment, arguing that the Court erred in denying the motion to supplement. *See* Mot. to Alter or Amend, ECF No. 178. The Government filed a Response in Opposition to the Motion to Alter or Amend Judgment on December 4, 2025. *See* Resp., ECF No. 182. Krasley did not file a Reply.

On January 14, 2026, Krasley filed a Motion to Expand the Record in support of his Motion to Alter or Amend and requested a second evidentiary hearing. *See* Mot. to Expand, ECF No. 183. Krasley seeks to include five exhibits:

1. February–May 2024 email correspondence regarding the request and production of "raw data from Kismet";
2. Defense counsel's July 30, 2024 confirmation of receipt of the .pcap files and discussion of their origin;
3. Post-hearing correspondence concerning the Stipulation and authenticity of the data;
4. Additional post-hearing emails negotiating the Stipulation and addressing the open record; and
5. The July 24, 2025 Stipulation that the Government produced the Title III wiretap data on a thumb drive.

*See* Ex. 1; Ex. 2; Ex. 3, ECF No. 183-3; Ex. 4, ECF No. 183-4; Ex. 5. The Government did not file a response, and the Court thus treats Krasley's Motion to Expand as unopposed.

**A. Parties' Arguments**

Krasley argues that this Court made a manifest error[3] in its due diligence analysis under 28 U.S.C. § 2255(f)(4). *See* Mot. to Alter or Amend 3. Krasley argues that habeas counsel could not have discovered, through due diligence, that Donato saw the Title III wiretap data before trial and failed to provide the same data to McArdle. *See id.* Krasley maintains that the "core facts" about the Title III data were "unknowable" and "an investigation would have been futile" because there was no reasonable basis for habeas counsel to suspect the "internal breakdown where [Donato] reviewed evidence with the [G]overnment but failed to provide it to his own expert." *Id.* at 4. In support of his argument, Krasley asserts that Donato testified at the evidentiary hearing that "he could not remember much about technical matters and did not know what [.pcap] data was." *Id.* (citing Tr. at 62:14-20). Thus, Krasley maintains that "[t]he only way to uncover the factual predicate was to place the relevant witnesses under oath and then conduct post-hearing fact-finding with the Government." Mot. to Alter or Amend 4. Furthermore, Krasley

[3] The standard is whether the party seeking reconsideration can show "(3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). By arguing that the Court made a "manifest error," Krasley misstates the law.

contends that the Government was unsure whether the data was Kismet or Title III wiretap data, until the Government contacted Special Agent Evans to confirm the data after the hearing. *See id.* at 4–5 (citing Tr. at 114:8-14). Finally, Krasley asserts that, without knowing whether Donato saw the Title III wiretap data, there was no reason to ask McArdle about the Title III wiretap data. *See* Mot. to Alter or Amend 5.

In return, the Government contends that Krasley's habeas counsel, who entered his appearance of November 1, 2023, has had access to the "entirety of [Donato's] case file, which included [Donato's] notes, and discovery." Resp. 6. The Government also asserts that habeas counsel had McArdle's report, which listed all evidence McArdle reviewed, by July 30, 2024, at the latest. *See id.* at 6–7. Based upon the report, the Government argues that the parties knew that McArdle did *not* review the Title III data. *See id.*; *see also* Ex. J at 12 (listing the discovery reviewed in McArdle's October 2019 Cornerstone report). The Government maintains that habeas counsel could have asked McArdle about the evidence that he reviewed before Krasley's trial. *See* Resp. 7. The Government also argues that habeas counsel could have spoken to Donato or Agent Evans to seek clarification as to "what the files were, who created them, and if they were reviewed by [Donato] before the trial." *Id.* Additionally, the Government avers that habeas counsel only hired an alleged expert after the June 2025 evidentiary hearing, when habeas counsel could have hired an expert between July 2024 and the June 2025 evidentiary hearing (or any time before the hearing) to review the Title III wiretap data. *See id.* at 7–8; *see also* Ex. A. Finally, the Government alleges that habeas counsel had access to the trial transcript, which showed that the Government had the Title III wiretap data, and that Cornerstone Discovery (through McArdle's report) did not review the Title III wiretap data. *See* Resp. 7–8.

## III. LEGAL STANDARDS

### A. Title 28 U.S.C. § 2255 – Review of Applicable Law

Motions filed under 28 U.S.C. § 2255 are the presumptive means by which federal defendants can challenge their convictions or sentences that are allegedly in violation of the Constitution or laws of the United States or are otherwise subject to collateral attack. *Davis v. United States*, 417 U.S. 333, 343 (1974); *O'Kereke v. United States*, 307 F.3d 117, 122–123 (3d Cir. 2002). Section 2255 "states four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426–427 (1962) (quoting 28 U.S.C. § 2255(a)). There is a one-year period of limitations to § 2255 motions that runs

> . . . from the latest of-
> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented by making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

### B. Federal Rule of Civil Procedure 59(e) – Review of Applicable Law

Rule 59(e) allows a litigant to file a motion to alter or amend a judgment within twenty-eight days from entry of the judgment. *See* Fed. R. Civ. P. 59(e). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered

evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through--rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal quotations omitted); *see also Banister v. Davis*, 590 U.S. 504, 508 (2020) (holding that "courts will not address new arguments or evidence that the moving party could have raised before the decision issued"). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Cont'l Cas. Co. v. Diversified Indus.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

## IV. ANALYSIS

Initially, because the Motion to Expand provides the Court with exhibits relevant to when habeas counsel and Krasley received the Title III wiretap data, which is used to determine the Motion to Alter or Amend Judgment, the Court grants the Motion to Expand in this respect.[4]

As to the Motion to Alter or Amend Judgment, Krasley fails to show that this Court made a clear error of law or fact in its due diligence analysis or in *sua sponte* denying the motion to supplement the 2255 Motion as untimely.

### A. Due Diligence Analysis

Krasley's arguments that the Court made a clear error of law or fact fail.

---

[4] To the extent the Motion to Expand also seeks an evidentiary hearing, it is denied.

First, Krasley's argument that the core facts were unknowable and investigation would be futile fails because his habeas counsel could have reviewed the Title III wiretap data upon receipt in May or June 2024, far in advance of the evidentiary hearing. Krasley alleges that the facts surrounding the Title III data were unknowable because Donato testified at the evidentiary hearing, which was held almost a year after habeas counsel had the data, that he could not remember much about the Title III data. *See* Tr. at 62:14-20. Yet, Donato testified in the same breath that the Government provided him with every document that he requested. *See id.* at 62:20-23. Habeas counsel, who entered his appearance in November 2023, *see* ECF Nos. 136, 138, could have asked Donato about the files at any time and did not need to wait for the evidentiary hearing, which is what due diligence required of him. Moreover, habeas counsel had the Title III wiretap data by July 30, 2024, at the latest, but did not seek to supplement the Motion to Vacate until August 20, 2025, which again shows lack of due diligence. To the extent there was any confusion about the files,[5] habeas counsel could have spoken to Government counsel at any time.

Had Krasley himself acted with due diligence, he would have made the inquiries even earlier because Donato had the Title III wiretap data, which he discussed with Krasley, before the 2019 trial. *See* Tr. at 49:13-19 (Donato's testimony that he told Krasley that he was not sure the jury would believe him "because he was going to say some things that were directly counter to the evidence that I had been seeing in discovery."); *see also* Ex. B; Ex. 5.

---

[5] Habeas counsel suggests that the Court's due diligence analysis was erroneous because of "the Government's mislabeling of the 2024-produced data as 'Kismet' rather than Title III," Mot. to Expand 3, but the Government did not mislabel the data; rather, it simply used habeas counsel's language in the discovery request, *see* Ex. 2 at 12 (Habeas counsel's email dated February 26, 2024, stated: "I would like to obtain the full Kismet logs that have never been reviewed.").

Krasley and habeas counsel did not raise his new argument until more than a year after the Motion to Vacate was filed and more than two and a half years after the conviction became final, and his ineffective assistance claim was thus untimely. The Court correctly found there was no due diligence and concluded that Krasley's new claim was time-barred. *See United States v. Brown*, No. 06-365, No. 16-2208, 2022 WL 1592439, at *4 (E.D. Pa. May 19, 2022) (denying a motion for reconsideration under Rule 59(e) and noting that the defendant's supplemental "claim could have been discovered at a much earlier date through the exercise of due diligence" when the defendant made no attempt to obtain the trial transcripts).

Second, Krasley's argument that the Government was unsure about the Title III wiretap data on June 18, 2025, more than two years after Krasley's judgment became final and more than a year after the Motion to Vacate was filed, is irrelevant to whether Krasley and habeas counsel acted with due diligence in presenting the issue to the Court. Habeas counsel's suggestion that because the "Government could not immediately identify the data," neither he nor Krasley could have discovered its significance earlier in the preceding months and years, *see* Mot. to Alter or Amend 4–5 (citing Tr. 114:8-14), is unsupported. Krasley fails to acknowledge that his habeas counsel had the Title III wiretap data since July 2024 (at the latest), and could have asked Government counsel, Agent Evans, or McArdle about the data at any time. Krasley and habeas counsel seek to blame Government counsel for not having instant recall of the Title III wiretap data, amid the numerous files that the Government sent to habeas counsel. *See* Tr. 114:12-14 (When asked what counsel gave to habeas counsel, Government counsel responded, "I'm not sure, Your Honor, since this case has so many files, including the T3 pen/trap data, if what I gave him also included those data files."). But it was because of Krasley and habeas counsel's own lack of due diligence that the claim was not presented in a timely manner. *See Brown*, 2022 WL

1592439, at *4 (denying a motion for reconsideration when a defendant never tried to obtain a trial transcript and acknowledging that his new claim was untimely).

Third, to the extent that Krasley and habeas counsel argue that there was nothing to ask McArdle because he did not know whether McArdle had reviewed the Title III data, habeas counsel could have contacted McArdle or reviewed the report to ask if he knew about the Title III wiretap data. McArdle's October 2019 report showed the data that he considered in preparing the report, which did not include the Title III wiretap data. *See* Ex. J at 12. Krasley himself had access to the report before the trial (and in the years following the trial). Habeas counsel even conceded that "when [he] began representation in this case, one of the first things [he] did is reach out to Cornerstone . . . for a duplicate report." Tr. at 110:25–111:4. Nevertheless, habeas counsel did not question McArdle about the Title III documents. In the absence of due diligence, the Court did not err in finding that Krasley's new ineffective assistance claim was untimely. *See Brown*, 2022 WL 1592439, at *4 (denying a motion for reconsideration when a defendant never tried to obtain a trial transcript and thus his claim was untimely).

**B. Statute of Limitations**

Krasley's argument that the Court improperly raised the statute of limitations issue *sua sponte* also fails. Rather, Krasley himself raised the statute of limitations argument in his motion to supplement by arguing that his motion was timely. *See* Mot. to Suppl. 4–5. Therefore, the Court did not raise the statute of limitations *sua sponte*.

Regardless, "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a . . . habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006). *See also Long v. Wilson*, 393 F.3d 390, 401–404 (3d Cir. 2004) (holding that a federal judge may raise a statute of limitations defense to a habeas corpus petition *sua sponte* after an answer has been

filed). To the extent that the Court had to "accord the parties fair notice and an opportunity to present their position," *Day*, 547 U.S. at 210, Krasley had this opportunity by briefing the timeliness issue in the motion to supplement. Accordingly, there was no error in raising the issue. Moreover, contrary to Krasley's suggestion, the untimeliness was apparent from the face of the motion, which was filed two and a half years after judgment began final because Krasley had all the information he needed to support the new claim long before this date.

The Court denies Krasley's Motion to Alter or Amend Judgment.

## V. CONCLUSION

For the above-noted reasons, this Court denies John Joseph Krasley's Motion to Alter or Amend Judgment in the Court's August 26, 2025 Order and grants in part Krasley's Motion to Expand the Record.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge